1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | CASE NO.  C04-1852RSM |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING PLAINTIFF'S |
| v. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT AND DENYING |
| JOHN STEFANCHIK, *et al.*, | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| Defendants. | ) | |
| _____ | ) | |

14

## **I. INTRODUCTION**

15      This matter comes before the Court on plaintiff's motion for summary judgment, and

16   defendants John Stefanchik's and Beringer Corporation's ("Beringer") related motion for partial

17   summary judgment.  (Dkts. #125 and #129).  Plaintiff argues that in numerous instances, in

18   connection with the marketing, offering for sale, or sale of products and services about making

19   money in the paper business, defendants have made representations that are false and misleading

20   and constitute deceptive acts or practices in violation of Section 5(a) of the Federal Trade

21   Commission Act ("FTC Act").  In particular, plaintiff points to representations that consumers

22   will make large amounts of money in their spare time, and will receive help from coaches who

23   are substantially experienced in the paper business and are readily available.  Plaintiff further

24   argues that defendants did not possess or rely upon a reasonable basis that substantiated those

25   representations.  Finally, plaintiff asserts that both Mr. Stefanchik and Beringer should be held

26   liable under the Telemarketing Sales Rule for the actions of former defendants Justin Ely and

ORDER ON SUMMARY JUDGMENT
PAGE – 1

1   Atlas Marketing because Mr. Stefanchik actively participated in the telemarketing plan, and he

2   is the sole shareholder and president of Beringer.  As a result of these false and misleading

3   representations, plaintiff alleges that consumers across the United States have suffered

4   substantial monetary losses.

5       Defendants oppose the motion.  Defendants first respond with a motion to strike portions

6   of the exhibits submitted by plaintiff in support of its motion for summary judgment.  In

7   particular, defendants object to: (1) numerous declarations containing statements from

8   consumers about what they were allegedly told by the telemarketing sales representatives; (2) a

9   declaration from a former coach containing statements about how she and other coaches kept

10  records of consumer feedback; and (3) portions of the telemarketing scripts.  Defendants assert

11  that those statements are inadmissible hearsay or lack foundation, and should be excluded for

12  purposes of the motion.  Defendants further argue that there are numerous issues of material

13  fact which preclude summary judgment in this action.  In particular, defendants call into

14  question the opinion of plaintiff's expert witness, Dr. Manoj Hastak, arguing that his survey of

15  purchasers of Stefanchik's program is not reliable.  Defendants also argue that they have a

16  reasonable basis for the assertions in their program because Stefanchik's personal experience in

17  creating substantial wealth supports the assertions.  Finally, in their own motion for partial

18  summary judgment, defendants argue that they cannot be held liable for the actions of Mr. Ely

19  or Atlas Marketing under the Telemarketing Sales Rule, because neither Mr. Ely nor Atlas were

20  agents of the current defendants.

21      For the reasons set forth below, the Court DISAGREES with defendants, GRANTS

22  plaintiff's motion for summary judgment, and DENIES defendants' motion for summary

23  judgment.

24  ## II.  DISCUSSION

25  ### A.  Background

26      Plaintiff filed the instant case on August 24, 2004, following a two-year investigation of

ORDER ON SUMMARY JUDGMENT
PAGE – 2

1  defendants' trade practices.  Plaintiff alleges that defendants have violated section 5(a) of the

2  FTC Act, and the FTC's "Telemarketing Sales Rule," through deceptive ads and marketing

3  statements.

4      Defendant John Stefanchik is an entrepreneur who made his money through the process of

5  buying and selling privately held mortgages, commonly known as paper mortgages.  He is the

6  author of the book "Wealth Without Boundaries," in which he describes how other individuals

7  can become involved in the paper mortgage industry.  Mr. Stefanchik formed defendant

8  Beringer Corporation in Washington State in 2002.  The corporation holds the copyrights to all

9  of Mr. Stefanchik's books, videos and other publications.  Mr. Stefanchik is the president,

10  manager, and sole shareholder of Beringer Corporation.

11      Former defendant Atlas Marketing, Inc. ("Atlas"), is a Nevada corporation doing business

12  in Utah.  Atlas conducted all of the telemarketing and promotion of Mr. Stefanchik's materials.[1]

13  Former defendant Justin Ely worked at Atlas and was responsible for creating the telemarketing

14  scripts and product pricing.  He also performed the oversight of the telemarketers, including

15  their training, hiring and firing.  Mr. Ely and Atlas apparently retained the ultimate authority

16  over whether a customer received a refund.

17      Defendants and former defendants marketed and sold course materials, in-person

18  workshops, videotapes, audio tapes, and other products and services that purport to teach

19  consumers how to purchase and/or sell privately held mortgages or promissory notes that are

20  secured by real estate.  Mr. Stefanchik has marketed and sold these products since the late

21

22  _____

23  [1] Plaintiff previously sought a preliminary injunction against Mr. Stefanchik, Scott
Christensen, the president of Atlas, and Mr. Ely in their individual capacities, and both Beringer
24  Corporation and Atlas Marketing.  On October 15, 2004, Mr. Christensen and Atlas Marketing
voluntarily agreed to the entry of a preliminary injunction against themselves, and subsequently a
25  permanent injunction.  Mr. Ely also agreed to the entry of a permanent injunction against
himself.  As a result, those defendants have been dismissed.  The Court has issued a preliminary
26  injunction against Mr. Stefanchik and Beringer, and those defendants remain subject to this
action.

ORDER ON SUMMARY JUDGMENT
PAGE – 3

1980s; however, he has marketed and promoted his products through Atlas since 2001 and also through Beringer since 2002.

Former defendants began targeting consumers through direct mail pieces and internet advertising offering Mr. Stefanchik's book for sale.  Consumers who responded to the ads and purchased the book were then called by telemarketers who attempted to sell the consumer Mr. Stefanchik's additional products and services, such as seminars, workshops, videotapes and personal coaches.  Consumers were typically charged between $5000 and $8000 for these products and services, depending on the particular package the consumer chose.  Consumers who balked at the price were apparently encouraged to spread the charges over several credit cards, or encouraged to open new credit cards to pay for the program.  Consumers were also apparently told that they would make their money back by the time the credit card bills are due.

Plaintiff alleges that to induce consumers to purchase Mr. Stefanchik's products and services, former defendants represented to consumers that they would learn how to become wealthy using Mr. Stefanchik's techniques.  Plaintiff further alleges that former defendants represented to consumers that they would make large amounts of money in their spare time, as much as $10,000 every 30 days, or $2,700 for only five or six hours of work.  Plaintiff asserts that, contrary to these representations, most consumers who purchased the products and services did not make large sums of money in their spare time, and many did not make any money at all.

In their telemarketing pitches, former defendants also offered a one-year coaching service that defendants represented would be staffed by coaches who are substantially experienced in the paper business, and who are readily available by telephone to assist consumers in finding and completing paper transactions.  Plaintiff asserts that defendants' coaches did not have substantial experience in the paper or real estate business, and many times, were not readily available to assist consumers at all.

Defendants respond that all of the statements used to market the Stefanchik program are

ORDER ON SUMMARY JUDGMENT
PAGE – 4

1   substantiated, and that untrue statements known to Mr. Stefanchik were immediately addressed

2   and put to a stop.  Defendants further argue that plaintiffs have based their arguments on a

3   sample of consumers that is too small to be representative of those who purchased and used the

4   program.  In particular, defendants focus on what they believe is the flawed survey of

5   consumers by plaintiff's expert witness, arguing that it is not reliable.  Finally, defendants argue

6   that they cannot be held liable under the Telemarketing Sales Rule because former defendants

7   are independent and did not act as agents for current defendants.  Defendants also argue that

8   they are not "sellers" for purposes of the Telemarketing Sales Rules.

9       **B.  Summary Judgment Standard**

10          Summary judgment is proper where "the pleadings, depositions, answers to

11   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

12   genuine issue as to any material fact and that the moving party is entitled to judgment as a

13   matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247

14   (1986).   The Court must draw all reasonable inferences in favor of the non-moving party.  *See*

15   *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*,

16   512 U.S. 79 (1994).  The moving party has the burden of demonstrating the absence of a

17   genuine issue of material fact for trial.  *See Anderson*, 477 U.S. at 257.  Mere disagreement, or

18   the bald assertion that a genuine issue of material fact exists, no longer precludes the use of

19   summary judgment.  *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics,*

20   *Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987).

21          Genuine factual issues are those for which the evidence is such that "a reasonable jury

22   could return a verdict for the non-moving party."  *Anderson,* 477 U.S. at 248.  Material facts

23   are those which might affect the outcome of the suit under governing law.  *See id.*  In ruling on

24   summary judgment, a court does not weigh evidence to determine the truth of the matter, but

25   "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc*., 41 F.3d

26   547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).  Furthermore,

ORDER ON SUMMARY JUDGMENT
PAGE – 5

1   conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat

2   summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345

3   (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material

4   facts are at issue in summary judgment motions. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610

5   F. 2d 665, 667 (9th Cir. 1980).

6       **C.  Motion to Strike**

7           As an initial matter, the Court addresses defendants' motion to strike portions of exhibits

8   submitted by plaintiff in support of its motion for summary judgment, including: (1) consumer

9   declarations containing statements about what they were allegedly told by telemarketing sales

10  representatives; (2) a declaration from a former coach containing statements about how she and

11  other coaches kept records of consumer feedback; and (3) portions of the telemarketing scripts.

12  The Court will address each dispute in turn.

13          *1.  Consumer Declarations*

14          Defendants first object to portions of the declarations of Richard Bakka, Roberta Bell,

15  Mary Farran, Helen Fones, Frances L. Jackson, William F. Kelly, William R. McArthur, Lester

16  Peek, Samantha H. Routh, Shay Seigel, John Sellers, Gary W. Sharp and Joshua Weil, on the

17  basis that the statements contain inadmissible hearsay. In particular, defendants object to the

18  declarants' statements about how much money telemarketers and/or coaches represented each

19  consumer could make by using the techniques set forth in the Stefanchik program. Defendants

20  misunderstand the hearsay rule. Under Federal Rule of Evidence 801, "hearsay," is a statement,

21  other than one made by the declarant while testifying at trial, offered to prove the truth of the

22  matter asserted. However, plaintiff notes that the statements now in dispute are offered as

23  evidence of what the telemarketers said to consumers, not for the truth of the matter asserted,

24  and therefore, are not hearsay. The Court agrees. Accordingly, the Court denies the motion to

25  strike portions of the consumer declarations.

26

ORDER ON SUMMARY JUDGMENT
PAGE – 6

1

B.  Coach Declaration

2    Defendants next object to portions of the declaration of Amanda Schaufler, on the basis

3    that it contains inadmissible hearsay or is not based on personal knowledge.  Defendants provide

4    no evidence that Ms. Schaufler lacks personal knowledge for many of the statements she makes.

5    Indeed, to the contrary, she describes many of her own observations.  Further, to the extent that

6    her declaration offers evidence regarding what defendants knew about complaining customers,

7    those statements are not hearsay.  Out-of-court statements introduced to demonstrate that a

8    defendant had knowledge of the information contained in the statement is permissible.  *See*

9    *Calmat Co. v. U.S. Dept. of Labor*, 364 F.3d 1117, 1124 (9th Cir. 2004) (explaining that

10   statements introduced to show that a party had certain information, rather than for the truth of

11   the information, are not hearsay).  Accordingly, the Court denies the motion to strike portions

12   of Ms. Schaufler's declaration.

13

C.  Statements Made in Telemarketing Script

14   Finally, defendants argue that Exhibit 21 to the preliminary injunction, which contains

15   copies of Atlas telemarketing scripts, contains inadmissible hearsay that should be excluded.  In

16   particular, defendants object to the following portion:

17
My name is _____ and my phone number is _____.  Write down
5-10 hours per week.  That's how much time you will need to spend.  Each

18   deal may be worth between $3,000 to $5,000 to you.  You could be making
money in 90 days if you do this the Stefanchik way and put in the time and

19   effort.

20   Defendants apparently believe this constitutes inadmissible hearsay because it refers to the

21   employees of Atlas.  Again, defendants misunderstand the hearsay rule.

22   The script quoted was produced to plaintiff by  former counsel for the defendants, Gary

23   Hailey.  In his cover letter to plaintiff, Mr. Hailey represented that the script was being used to

24   telemarket the Stefanchik program.  Thus, the script is a document used in the ordinary course

25   of business of defendants' telemarketing activities.  The Court agrees with plaintiff that the

26   script is a business record relied upon in the ordinary course of business, and as such, the

ORDER ON SUMMARY JUDGMENT
PAGE – 7

1  statements are admissible.  *See* Fed. R. Evid. 803(6).  Further, plaintiff notes that the statements

2  in the scripts are not being offered for the truth of the matter asserted, but rather to show that

3  the statements were made to consumers.  Accordingly, the Court also agrees that the statements

4  are not hearsay for that reason, and denies the motion to strike portions of the telemarketing

5  scripts.

6        **C.  Section 5 of the Federal Trade Commission Act**

7        Plaintiff argues that defendants have acted deceptively in marketing the Stefanchik

8  program.  An act or practice is "deceptive" within the meaning of the FTC Act if there is a

9  representation, omission, or practice that is likely to mislead consumers acting reasonably under

10 the circumstances and that representation, omission, or practice is material to the consumer's

11 payment decision.  *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994).  Reasonable

12 consumers are not required to doubt the veracity of express representations, and the Court may

13 presume express claims to be material.  *Id.* at 1095-96.  Implied claims are presumptively

14 material where there is evidence that the seller intended to make the claim go to the heart of the

15 solicitation or the characteristics of the product or service offered.  *See Kraft, Inc. v. FTC*, 970

16 F.2d 311, 322 (7th Cir. 1992); *see also Southwest Sunsites, Inc.*, 105 F.T.C. 7, 149 (1985),

17 *aff'd*, 785 F.2d 1431 (9th Cir. 1986); *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 604 (9th Cir.

18 1993) (explaining that the law does not protect people who merely imply their deceptive

19 claims).  Furthermore, a consumer's reliance on such false claims is presumptively reasonable.

20       Plaintiff also argues that claims that purchasers of the Stefanchik program can make large

21 amounts of money in their spare time are false and unsubstantiated earnings claims.  Plaintiff

22 asserts that defendants are unable to demonstrate that they have a reasonable basis for their

23 earnings claims.  Plaintiff's argument is supported by the survey results presented by Dr.

24 Hastak, and the numerous consumer declarations attached to the motion for preliminary

25 injunction.  In addition, plaintiff argues that defendants falsely represent in their telemarketing

26 calls that their personal coaches are substantially experienced in the paper business and are

ORDER ON SUMMARY JUDGMENT
PAGE – 8

1  readily available by telephone to assist consumers in finding and completing paper transactions.

2      The FTC has provided sufficient evidence that consumers were led to believe that they

3  could make large amounts of money in the paper business with little or no effort.  (Dkts. #3 and

4  #4, Exs. 7-23 and #125, Ex. 14).  Both the telemarketers and defendants' own advertising and

5  direct marketing pieces make those claims.  (Dkt. #3, Ex. 6).  Defendants have provided no

6  consumer declarations or survey information of their own with contrary information.  Although

7  defendants argue that all of Stefanchik's representations are based on his own success in the

8  paper industry, and that all of his representations are qualified with words such as "if you put in

9  the time and effort you could . . ." or "these results are not typical," the Court finds, in light of

10 the representations as a whole, a reasonable consumer's net impression would be that he or she

11 could make large amounts of money in a short amount of time, and defendants' qualifications do

12 not overcome that net impression.  Furthermore, plaintiff has provided evidence that

13 defendants' claims were material to the consumers' purchasing decisions, and defendants have

14 shown no basis for asserting otherwise.  (*See* Dkts. #3 and #4, Exs. 7-23).

15     Further, defendants' two expert witnesses do not raise any issue of material fact with

16 respect to Dr. Hastak's survey.  While defendants argue that the survey is flawed, based on their

17 own expert witnesses' opinions, that objection goes to the admissibility of the survey results.[2]  It

18 does not create a factual dispute.  Indeed, defendants' experts have not provided any of their

19 own evidence demonstrating that consumers made money using the Stefanchik program.  Thus,

20 there is no "battle of the experts" as defendants assert.

21     The same is true for defendants' coaching claims.  Defendants represented that their

22 coaches were knowledgeable about the paper business, and had experience in the industry.  Yet,

23 defendants admit that no formal training in the paper business is available, and therefore, the

24 _____

25     [2] Defendants do not argue that plaintiff's survey is inadmissible, nor have they even attempted to demonstrate inadmissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,

26 509 U.S. 579, 580 (1993), which sets forth the factors a trial court considers when determining whether to permit offered expert testimony.

ORDER ON SUMMARY JUDGMENT
PAGE – 9

1    coaches were all trained by Stefanchik himself.  While the FTC acknowledges that formal

2    training is not always necessary, the consumer declarations show that many of the coaches did

3    not even have a basic knowledge of the real estate industry, and were unable to assist the

4    consumers with their questions.

5         Under the FTC Act, a principal is liable for misrepresentations made by its agents

6    regardless of any efforts of the principal to prevent such misrepresentations.  *Goodman v. FTC*,

7    244 F.2d 584, 592-93 (9th Cir. 1957); *Standard Distributors v. FTC*, 211 F.2d 7, 13 (2d Cir.

8    1954).  Mr. Stefanchik specifically testified that he had an oral agreement, on behalf of

9    Beringer, with Atlas to market and sell Mr. Stefanchik's products and services.  (Dkt. #125, Ex.

10   5 at 159-60,188 and 190-91).  Under that arrangement, Beringer would receive a certain

11   percentage of gross revenue as royalties.  (Dkt. #125, Ex. 5 at 191).  Defendants also had the

12   ability to review and approve direct mail pieces and telemarketing scripts, either directly or

13   through counsel.  (Dkt. #125, Ex. 5 at 203-06, 208-10 and 212-15).  Mr. Stefanchik also

14   decided which materials would be sold through the program.  (Dkt. #125, Ex. 5 at 207).  On

15   this record, the Court agrees that an agency relationship was created between Mr. Stefanchik

16   and Atlas Marketing, and therefore, Beringer is liable for the misrepresentations made to

17   consumers.

18        Likewise, the Court agrees that Mr. Stefanchik is individually liable for the actions of

19   Beringer and its agents.  A corporate owner is liable for corporate violations of Section 5 if the

20   individual participated in the deceptive corporate acts or had authority to control them.

21   *Goodman*, 244 F.2d at 592-93; *see also FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1202

22   (9th Cir. 2006); *Southwest Sunsites*, 785 F.2d at 1438-39.  Mr. Stefanchik had the authority to

23   control Beringer and its agents.  He is the president, manager and sole shareholder of the

24   corporation.  Further, as noted above, he had the ability to review and edit the direct mail pieces

25   and telemarketing scripts, and decided what materials would be sold.  Therefore, Mr. Stefanchik

26   is also liable under Section 5.

ORDER ON SUMMARY JUDGMENT
PAGE – 10

1

### D.  Telemarketing Sales Rule

2      In 1994, Congress determined that it "should enact legislation that will offer consumers

3  necessary protection from telemarketing deception and abuse."  15 U.S.C. § 6101.  As a result,

4  Congress directed the FTC to "prescribe rules prohibiting deceptive telemarketing acts or

5  practices and other abusive telemarketing acts or practices."  15 U.S.C. § 6102.  In response,

6  the FTC adopted the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § § 310.1 – 310.9.  The

7  TSR was subsequently amended on January 29, 2003.  68 Fed. Reg. 4580 (Jan. 29, 2003).

8      The TSR prohibits, *inter alia*, any seller or telemarketer from misrepresenting, directly or

9  by implication, any material aspect of the performance, efficacy, nature, or central

10  characteristics of goods or services that are the subject of a sales offer.  16 C.F.R.

11  § 310.3(a)(2)(iii).  The TSR also prohibits sellers and telemarketers from making a false or

12  misleading statement to induce any person to pay for goods and services.  16 C.F.R.

13  § 310.3(a)(4).  As discussed above, the Court has found that deceptive earnings and coaching

14  claims were made to consumers during telemarketing sales calls.  Those claims were central to

15  the sales offer, and induced consumers to purchase the program.

16      Defendants argue that neither Mr. Stefanchik nor Beringer can be held liable for the

17  actions of Mr. Ely, Mr. Christensen or Atlas, because they are not agents for Mr. Stefanchik or

18  Beringer.  The Court finds that argument without merit.  As detailed above, defendants had

19  substantial authority to control what consumers were told in the marketing of the Stefanchik

20  program.  They had authority to review, and exercised that authority, the direct mail pieces, and

21  they provided final review of most of the advertising copy for the Stefanchik products and

22  services.  If Mr. Stefanchik asked Mr. Ely to make changes, he would do it.  Mr. Stefanchik

23  also reviewed the scripts, either directly or through his attorney.  Mr. Stefanchik was aware that

24  the telemarketers were informing consumers that they could be making $3,000 - $5,000 per deal

25  in just 5-10 hours per week, and was told by his own attorney that he must be able to

26  substantiate those claims or he risked violating telemarketing laws.  (Dkt. #125, Ex. 6 at 318,

ORDER ON SUMMARY JUDGMENT
PAGE – 11

1   323-24, 327, 329, 339 and 343).

2       It is well-settled that a principal is liable under the FTC Act for misrepresentation made by

3   its agents, even if those agents do not fall within the traditional definition of agency. *Goodman*,

4   244 F.2d 584, 592-93. This Court has already found that Atlas and Mr. Ely acted as agents for

5   Beringer and Mr. Stefanchik. Accordingly, the Court now finds Beringer liable for violations of

6   the TSR through the acts of Atlas and Mr. Ely.

7       Likewise, the Court finds Mr. Stefanchik individually liable for the acts of Atlas and Mr.

8   Ely. Individuals are personally liable for restitution for corporate misconduct if they "had

9   knowledge that the corporation or one of its agents engaged in dishonest or fraudulent conduct,

10  that the misrepresentations were the type upon which a reasonable and prudent person would

11  rely, and that consumer injury resulted." *FTC v. Publishing Clearing House, Inc.*, 104 F.3d

12  1168, 1171 (9th Cir. 1996). The knowledge requirement can be satisfied by showing that the

13  individuals had actual knowledge of material misrepresentations, were recklessly indifferent to

14  the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud

15  along with an intentional avoidance of the truth. *Id.* The Commission, however, "is not

16  required to show that a defendant intended to defraud consumers in order to hold that individual

17  personally liable." *Id.*; *see also Affordable Media, LLC*, 179 F.3d at 1234. Here, it is clear that

18  Mr. Stefanchik had actual knowledge of the earnings and coaching claims being made, or, at the

19  very least, was recklessly indifferent to the truth or falsity of those claims. Accordingly, the

20  Court now finds Mr. Stefanchik liable for violations of the TSR.

21              **III.  CONCLUSION**

22      Having reviewed plaintiff's motion for summary judgment, defendants' motion for partial

23  summary judgment, the oppositions and replies in support thereto, and the remainder of the

24  record, the Court hereby ORDERS:

25      (1)  Defendants' Motion for Summary Judgment (Dkt. #129) is DENIED.

26      (2)  Plaintiff's Motion for Summary Judgment (Dkt. #125) is GRANTED, and this case is

ORDER ON SUMMARY JUDGMENT
PAGE – 12

1   CLOSED.  The Court will enter plaintiff's proposed permanent injunction upon entry of this

2   Order.

3       (3)  Plaintiff's pending Motion In Limine (Dkt. #142) is STRICKEN AS MOOT.

4       (4)  The Clerk shall direct a copy of this Order to all counsel of record.

5       DATED this  _3_  day of April, 2007.

6

7                                             RICARDO S. MARTINEZ
                                              UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ON SUMMARY JUDGMENT
PAGE – 13